UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

—————————————————————x

UNITED STATES OF AMERICA

V.                                                                          18 CR 699 (CM)

LAWRENCE NEWKIRK,

        Defendant.

—————————————————————x

DECISION AND ORDER DENYING MOTION FOR COMPASSIONATE RELEASE

McMahon, C.J.:

On July 10, 2019, Lawrence Newkirk was sentenced by this Court to 60 months' in prison, in connection with his plea of guilty to possessing a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. §924(c). Newkirk is currently serving his sentence at FCI Allenwood Medium—his projected release date is September 9, 2022.

Before the Court is Newkirk's motion asking the Court to grant him compassionate release pursuant 18 U.S.C. §3582(c)(1)(A)(i), as amended by the First Step Act ("FSA"), P.L. 115-391. Newkirk claims that the combination of (1) his serious health conditions, including chronic asthma, glaucoma, partial blindness and severe eczema (which he says increase his risk of suffering severe illness or death from COVID-19), and (2) the spread of COVID-19 in the Bureau of Prisons generally, and specifically, at FCI-Allenwood Medium, "constitute 'extraordinary and compelling reasons' to reduce his sentence to time served. Docket Entry #28, Newkirk Memo at 1.

Government opposes Newkirk motion arguing that he has failed to demonstrate extraordinary and compelling reasons warranting compassionate release, and that the Sentencing factors at 18 U.S.C. § 3553(a), weigh heavily against a sentence reduction.

Compassionate Release

Under 18 U.S.C. § 3582(c), a district court "may not" modify a term of imprisonment once imposed, except under limited circumstances. One such circumstance is the so-called compassionate release provision, which provides that a district court "may reduce the term of imprisonment" where it finds "extraordinary and compelling circumstances." § 3582(c)(1)(A)(i). A motion under this provision may be made by either the Bureau of Prisons or a defendant, but in the latter case only "after the defendant has *fully exhausted all administrative rights* to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.* (emphasis added). Thus, where a compassionate release motion is brought by a defendant who has not "fully exhausted all administrative rights," the district court "may not" modify his term of imprisonment.

If a defendant demonstrates that he has exhausted his administrative remedies with the BOP, the Court must then consider whether the defendant has met his burden of establishing "extraordinary and compelling circumstances" warranting release.[1] Until recently, this Court—and many of my district court colleagues—looked to United States Sentencing Guidelines §

---

[1] "A party with an affirmative goal and presumptive access to proof on a given issue normally has the burden of proof as to that issue." *See, e.g.,* United States v. Butler, 970 F.2d 1017, 1026 (2d Cir. 1992).

1B1.13 (the applicable Guidelines section for sentencing reductions pursuant 18 U.S.C. §

3582(c)(1)(A)(i)), for guidance on what constituted "extraordinary and compelling

circumstances."[2] That changed on September 25, 2020, when the United States Court of Appeals

for the Second Circuit held that § 1B1.13 is not applicable to a motion brought by a defendant in

the district court. *United States v. Brooker* No. 19-32180-CR, 2020 WL 5739712, at \*6 (2d Cir.

Sept. 25, 2020). The Second Circuit reasoned that the language of § 1B1.13—language that has

not been updated since the passing of the First Step Act—addressed only sentencing reduction

motions initiated by the Bureau of Prisons. *Id.* In making clear that the district court was not

constrained by the narrow grounds for granting compassionate release in § 1B1.13, the Second

Circuit declared unequivocally that "district courts have discretion to consider the full slate of

extraordinary and compelling reasons that an imprisoned person might bring before [the court] in

---

[2] The Application Notes to Section 1B1.13 describe the circumstances under which "extraordinary and compelling reasons" exist. *See* § 1B1.13 comment (n.1). For example, the medical circumstances ground reads as follows:

(A)     Medical Condition of the Defendant.—

    (i)     The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia

    (ii)    The defendant is—

        (I)     suffering from a serious physical or medical condition,

        (II)    suffering from a serious functional or cognitive impairment, or

        (III)   experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self- care within the environment of a correctional facility and from which he or she is not expected to recover.

*Id.* § 1B1.13 comment (n.1).

motions for compassionate release," and that "neither Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion." *Id* at *7.

What *Brooker* did not change, however, is the mandate in § 3582(c)(1)(A)(i) that a court contemplating a defendant's release pursuant to that section must first consider the sentencing factors at 18 U.S.C. § 3553(a), to the extent they are applicable, and determine whether they counsel for or against release. A court may still deny compassionate release where the § 3553(a) factors override, in any particular case, what would otherwise be extraordinary and compelling circumstances.

### Newkirk's Motion in the Bureau of Prisons

On July 14, 2020, Newkirk filed an administrative relief request with Warden Howard at FCI Allenwood Medium seeking compassionate release on health and COVID-19 grounds.  On July 27, 2020, he received a letter from Warden Howard denying his request. (Warden Letter). Accordingly, Newkirk has exhausted his administrative remedies with the BOP, and his present motion—filed on November 11, 2020—for compassionate release is properly before this Court.

### Newkirk's Motion in the District Court

Post *Brooker*, a court considering an inmate's compassionate release motion based on medical grounds need no longer look to the applicable Application Notes in the Sentencing Guidelines to determine whether the inmates medical condition meets the rigid medical criteria enumerated in the Guidelines that would warrant release. In the context of a compassionate release motion predicated on an inmates poor health and the risk of contracting COVID-19 in a Bureau of Prisons facility, the Court may now recognize the obvious: An inmate (1) in a Bureau of Prisons Facility with a high rate of COVID-19 infections, and (2) who suffers from health

4

conditions found by the Center for Disease Control to place a person at an increased risk of suffering a severe outcome from Covid-19, has met the "extraordinary and compelling" threshold standard warranting compassionate release.

Here Newkirk claims that he has "chronic asthma, glaucoma, partial blindness, and severe eczema" that places him at "greater risk of severe illness or death from COVID-19." Newkirk Memo at 5. However, the CDC does not recognize glaucoma, partial blindness, and severe eczema as conditions placing an individual at an increased risk of severe illness from COVID-19.[3] As for Asthma, the CDC says that "having *moderate-to-severe asthma might increase your risk* for severe illness from COVID-19." *Id.* (emphasis added); *see also* Defendant's Reply at 1. The Court accepts, as defendant points out in his memorandum in support of his motion, that "[v]iral infections, like COVID-19, can cause asthma symptoms to flare up" which "makes it particularly important to keep asthma under control with medication and follow asthma action plans, to avoid having an asthma attack or other symptoms."[4] Significantly, Newkirk's BOP medical records indicate that he is receiving adequate medical care, and that his asthma is currently "well controlled with PRN Albuterol." Government Response, Ex. A at 17.

In regard to the risk of contracting COVID-19 at Allenwood Medium FCI: According to BOP website, there have been 783 COVID-19 tests administered at Allenwood Medium since the Pandemic began, yielding 278 positive results. *See* BOP COVID-19 Dashboard,

---

[3] *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019- ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html.
[4] Citing Leslie Young, Asthma and coronavirus — what are the risks?, Global News (Apr. 26, 2020), available at, https://globalnews.ca/news/6858267/asthma-coronavirus- risk/.

https://www.bop.gov /coronavirus/ (last visited December 9, 2020). Currently, there are 45 inmates and 9 staff at Allenwood Medium testing positive for the virus.[5] The implementation of the Bureau of Prison's National Multi-Phase Action Plan for combatting COVID-19 (*see BOP COVID-19 Action Plan*, https://www.bop.gov/ resources/ news/20200313_covid-19.jsp., (periodic updates to plan omitted)), appears to have had limited effect in controlling the virus at Allenwood Medium. Given the current trajectory of the infection rate throughout the country, there is no reason to believe that Allenwood Medium will be reducing its infection rate anytime soon.

Notwithstanding the infection rate at Allenwood Medium, I do not find that Newkirk—who is relatively healthy, save his controlled Asthma—has demonstrated that he is in mortal danger if he contracts COVID-19. And while the Court has been freed by *Brooker* to consider the myriad of medical and other conditions that might warrant granting compassionate release, § 3582(c)(1)(A)(i) still only authorizes release where the circumstances are truly "extraordinary and compelling;" not merely when circumstances are less than optimal. Again, this is so even though the Court accepts for the purposes of this motion that most anyone—inmate or staff, healthy or not—would be better off living in an environment with a lower infection rate than that at Allenwood Medium.

---

[5] After dealing with numerous compassionate release motions over the last many months, I have learned that BOP statistical reporting for a particular facility does not always comport with, and often understates the actual infection rate at that facility. For instance, the Court's review of the BOP COVID-19 Dashboard on December 2, in connection with a motion by another inmate from Allenwood Medium, showed 102 inmates testing positive. Now, seven days later, there are "only" 45 testing positive, yet the reported number of inmates who have recovered does not show a corresponding increase. Thus, it is hard to say from the reported numbers just how bad the virus outbreak is at Allenwood-Medium, other than to say: it is not good.

Moreover, the principles of sentencing set forth at 18 U.S.C. § 3553(a) counsel against releasing Newkirk. The Court is heartened that defendant appears to be behaving well in prison. *See* Def. Memo. at 23. However, the principal consideration for the Court at the time of sentencing was the protection of the community. As I said then, Newkirk is "a man who likes guns and [has] demonstrated that repeatedly." Sentencing Transcript at 7. Prior to his conviction in the present case, Newkirk served a 42-month sentence for possessing a loaded firearm. Those three and a half years in jail obviously did not deter him: less than a year after his parole in that case ended, he committed the instant weapons offense. I sentenced Newkirk to the statutory mandatory minimum—60 Months. I find no basis to grant a motion for compassionate release, filed pursuant to 18 U.S.C. §3582(c)(1)(A)(i).[6]

This constitutes the decision and order of the Court.

Dated: December 10, 2020

Colleen McMahon
Chief Judge

---

[6] While the Court fines no basis to grant Newkirk's compassionate release motion, the BOP has it within its authority to allow him to serve the remainder of his sentence in home confinement. *See* Office of the Attorney General, Memorandum for Director of Bureau Prisons: Prioritization of Home Confinement as Appropriate in Response to COVID-19 Pandemic (Mar. 26, 2020), https://www.justice.gov /file/1262731/download; *see also* United States v. Lewis Stahl, 18 Cr. 694 (RA), Declaration of Jennifer A. Broton ¶ 19 (Dkt. No. 65-1), April 22, 2020, Department of Justice Memorandum prioritizing for home confinement inmates who have served 50% or more of their sentences or have 18 months or less remaining on their sentences and have served 25% or more of their sentences. If BOP officials determine that Newkirk has indeed been, as he says in his motion, "an exemplary detainee," and is an otherwise good candidate for release under its criteria, the Court would not be offended if BOP exercised that authority and released Newkirk.